IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORI A. SCHOENWANDT, | ) CIV. NO. 14-00398 HG-KSC |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION TO ) DISMISS COMPLAINT WITH LEAVE |
| vs. | ) TO AMEND |
| LORI KARAN, DEBBORAH STAMPFLE, GARY SALDANA, TINA ARAGON, WINONA KEAWE, ABBY MEDRANO, DR. FRAUENZ, MARK PATTERSON, THOMAS EVANS, SONYA MAAE, HAKU KAMELAMELA, GRACE JOHNSON, | ) ) ) ) ) ) |
| Defendants. | ) |

**FINDINGS AND RECOMMENDATION TO DISMISS
COMPLAINT WITH LEAVE TO AMEND**

Before the court is pro se Plaintiff Lori A. Schoenwandt's prisoner civil rights complaint brought pursuant to 42 U.S.C. § 1983. When she filed this action, Plaintiff was incarcerated at the Women's Community Correctional Center ("WCCC"); she has since been released.[1] Plaintiff names Department of Public Safety ("DPS") employees Lori Karan, M.D., Debborah Stampfle, Gary Saldana, M.D., Tina Aragon, R.N., former Health Care Unit ("HCU") Director Winona Keawe, R.N., Abby Medrano, R.N., Orthopedic Consult Dr. Frauenz, former WCCC Warden Mark Patterson, Chief of Security Thomas Evans, Sergeant

---

[1] Plaintiff was released from custody on October 4, 2014. *See* Hawaii Department of Public Safety Hawaii Statewide Automated Victim Information and Notification (SAVIN) Service, avail at: https://www.vinelink.com/vinelink/siteInfoAction. (last visited Oct. 8, 2014) (showing "Sentence served").

Sonya Maae, Sergeant Haku Kamelamela, and Lieutenant Grace Johnson as defendants in their individual and official capacities.[2] She broadly alleges Defendants denied or delayed her medical care, failed to supervise others who denied or delayed her medical care, interfered with appropriate medical care, discriminated against her, or failed to protect her from harm. For the following reasons, the Court FINDS that Plaintiff fails to state a claim and RECOMMENDS the Complaint be DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2), with leave granted to amend.

## I. **LEGAL STANDARD**

Federal courts must screen all civil actions brought by prisoners seeking redress from a governmental entity, officer, or employee, and dismiss a claim or complaint that is frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

A court must construe pro se complaints liberally, in the light most favorable to the plaintiff, and accept all allegations of material fact as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010). Leave to amend should be granted

---

[2] Although Plaintiff names Charlotte Nguyen, NP, as a defendant, she alleges no claims against Nguyen.

2

unless amendment is futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The court should not advise a litigant how to cure the defects in the pleading, however, as this "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231(2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff says she entered WCCC on or about March 18, 2012, with a

> documented conclusive back, neck and Left hand orthopedic and Right arm neuromuscular [] condition, necessitating specific care, [which] was responded to with negation, negligence and deliberate indifference. All staff was influenced, biased and unethically superfluous, obviating medical aid and/or infirmary admission when exacting pain, etc. was clearly evident.

Compl., Doc. No. 1, PageID #3.

Plaintiff claims:

(1) Supervisors Dr. Lori Karan and Debborah Stampfle failed to "ensu[r]e legal parameters are followed and no harm/abuse/exploitation befalls the wards of the State under/in their jurisdiction." *Id.*, PageID #4.

(2) Dr. Saldana knew her difficulty walking, but failed to approve the delivery of her medication to her unit for three and a half months. She further claims Dr. Saldana delayed recommending disability housing for seventeen months, despite his knowledge of her disabilities.

(3) Supervising nurse Tina Aragon interfered with her appointments with Dr. Saldana and Charlotte Nguyen and

3

failed to allow her medicine to be delivered to her (presumably until Dr. Saldana's approval).

(4) Former HCU Director Winona Keawe failed to recommend Plaintiff for disability housing or infirmary placement and "relinquished responsibilities of HCU Director to retirement." *Id.*, PageID #7.

(5) Nurse Abby Medrano refused to discuss Plaintiff's ear infection with her on August 4, 2014, and, on August 14, 2014, "Katherine" examined Plaintiff's ears and told her there was no infection.

(6) Dr. Frauenz, an orthopedic surgeon consultant, refused to give Plaintiff a cortisone shot, immobilize her hand, or recommend disability housing.

(7) Former WCCC Warden Mark Patterson and Security Captain Thomas Evans knew of the "gravity of the Plaintiff's condition" but refused to authorize her "exceptional" housing, despite the HCU's request. *Id.*, PageID #9

(8) Sergeant Maae refused Plaintiff's requests to go to the HCU and verbally abused her. Sergeant Kamelamela forced Plaintiff to lead the medication line despite her difficulty walking, causing other inmates to taunt her. Plaintiff further claims Kamelamela falsely charged her with two infractions regarding inmate Angela Maiawa, although she admits grievances are still pending on these charges. Plaintiff also says Lieutenant Johnson failed to protect Plaintiff by separating inmate Maiawa from the general population.

Plaintiff alleges violations of the Eighth and Fourteenth Amendments, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and state law negligence and defamation claims.

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a

4

person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

**A.  Immunities**

The Eleventh Amendment bars claims for damages against state officials sued in their official capacity. *See Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). This is because state officials sued in their official capacity for damages are not "persons" for purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). State officials sued in their official capacity for injunctive relief, however, are considered persons for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Stated differently, the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908) does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997).

Moreover, under Title II of the ADA, claims for damages against defendants named in their *individual* capacity must be dismissed. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C.

5

§ 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA."). Claims against individuals under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g.*, *Abbott v. Rosenthal*, 2 F. Supp.3d 1139, *6 (D. Idaho 2014); *Becker v. Oregon*, 170 F. Supp.2d 1061, 1066 (D. Or. 2001); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187–88 (9th Cir. 2003) (*per curiam*) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities).

The Court FINDS that Plaintiff's claims for damages under § 1983 against Defendants in their official capacities, and under the ADA against Defendants in their individual capacities, fail to state a claim. The Court RECOMMENDS that these claims be DISMISSED without leave to amend. Plaintiff's damages claims against individual Defendants under § 1983 remain; Plaintiff's injunctive relief claims under the ADA and § 1983 against official capacity Defendants remain.

**B.    Rule 8 of the Federal Rules of Civil Procedure**

A complaint fails to state a claim if it (1) lacks a cognizable legal theory; or (2) contains insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading

6

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A sufficient complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff alleges insufficient facts for the court to reasonably infer that any Defendant violated her constitutional rights. She does not explain what "specific care" was required for her "documented" back, neck, hand, and arm "neuromuscular [ ] condition," or identify a physician or medical expert who recommended this unspecified treatment. Compl., Doc. No. 1,

7

PageID #3.  She fails to allege who at WCCC denied her this treatment, when this occurred, or explain why this treatment was allegedly denied.  What *can* be discerned from Plaintiff's statements is that she received medication and medical care from Dr. Saldana and others while she was incarcerated at WCCC.  Within three and a half months of her arrival, Dr. Saldana ordered that her medication be delivered to her.  He later approved a change of housing to alleviate her orthopedic and "neuromuscular" difficulties.  She was approved for an orthopedic consultation with Dr. Frauenz while at WCCC.  While Dr. Frauenz's diagnosis is not given, it is clear that Plaintiff disagrees with that diagnosis.  Plaintiff's other allegations regarding discrimination, interference with medical care, failure to supervise, false discipline charges, negligence, defamation, and taunting are equally unspecific.

Plaintiff's Complaint is simply a string of conclusory allegations and threadbare accusations without sufficient supporting facts to provide plausibility to her claims.  As such, she fails to state a claim that allows Defendants to adequately respond to or defend against her claims or for the court to reasonably infer that a constitutional violation occurred and that Defendants are responsible for that alleged violation.  The Court FINDS that Plaintiff fails to state a claim under Rule 8

and RECOMMENDS Plaintiff's Complaint is be DISMISSED with leave granted to amend.

**C.    Eighth Amendment Claims**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The two part test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).  Deliberate indifference may be shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). Thus, a plaintiff must allege facts showing that defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health[.]"  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

If an inmate alleges a delay in treatment, she must establish that the delay resulted in harm. *McGuckin*, 974 F.2d at 1060 (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) *(per curiam)*). The delay need not cause permanent injury; the unnecessary and wanton infliction of pain is sufficient. *Id.; see also Hudson v. McMillian*, 503 U.S. 1, 10 (1992). Additionally, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981) (internal citation omitted); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding prisoner's disagreement with diagnosis or treatment does not support a claim of deliberate indifference). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986) (internal citations omitted).

Plaintiff states that Dr. Saldana delayed three months before recommending that her medication be delivered to her, and seventeen months before recommending disability housing for her. She does not say when or how often she met with Saldana, what was discussed, or what course of treatment he chose. She fails to allege facts showing that Dr. Saldana consciously disregarded an

10

excessive risk to her health or that the delay resulted in further harm or the wanton infliction of unnecessary pain. Instead, Plaintiff's statements suggest that Dr. Saldana made a reasoned medical decision based on his assessment of Plaintiff's physical condition with which she disagreed.

Plaintiff alleges nurse Tina Aragon and Sonya Maae restricted her medical appointments and attendance at the HCU. She also complains that Aragon and Haku Kamelamela required her to walk to the HCU to receive her medicine. She provides no dates regarding when or how often this occurred. She admits, however, that she saw Drs. Saldana and Freunz, showing that she attended some medical appointments. And, Plaintiff does not allege that Aragon or Kamelamela continued to make her walk to the HCU after Dr. Saldana ordered that her medicine be delivered to her. Plaintiff's conclusory and contradictory allegations do not support an inference that Aragon, Maae, or Kamelamela acted with deliberate indifference to her serious medical needs.

Plaintiff complains that Dr. Frauenz refused to prescribe cortisone treatments or immobilize her hand. She sets forth no facts showing that this was medically unsound, she simply disagrees with it. This is insufficient to state a claim for deliberate indifference. To the extent Plaintiff faults Dr. Frauenz for failing to transfer her to different housing, she also admits Frauenz told her he lacked authority to do so, and

11

she provides nothing contradicting this.  These facts do not give rise to the inference that Dr. Frauenz acted with deliberate indifference to Plaintiff's medical needs.

Plaintiff's states she previously had an ear infection that lasted eight months.  She claims nurse Abby Medrano refused to speak with her about this ear infection on August 4, 2014.  She says that "Katherine" checked her ears on August 14, 2014, and told her they were clear.  These facts do not support an inference that Medrano (or Katherine) acted with deliberate indifference to Plaintiff's serious medical needs.

The Court FINDS that Plaintiff fails to state a violation of the Eighth Amendment against any Defendant and RECOMMENDS that these claims be DISMISSED with leave granted to amend.

**C.     Linkage and Supervisor Liability**

Under § 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of her rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  The statute requires an actual connection or link between the defendants' actions and the deprivation alleged.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Particularly with respect to supervisory, managerial, or executive-level personnel, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of her rights.  *Iqbal*,

556 U.S. at 675-76; *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Liability may not be imposed on a supervisor under the theory of respondeat superior. *Iqbal*, 556 U.S. at 675-76. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, a plaintiff must plead facts showing that the official violated the Constitution through his or her own individual actions. *Id.*

Plaintiff names Dr. Lori Karan, Debborah Stampfle, Winona Keawe, Mark Patterson, and Thomas Evans based on their status as supervisors or administrators. She makes no specific allegations against them showing they participated in or directed the alleged delay or denial of medical care or disability accommodations, or other deprivations of her rights, or knew of constitutional violations and failed to prevent them. The Court FINDS that Plaintiff's conclusory allegations fail to state a cognizable claim for relief against Defendants Karan, Stampfle, Keawe, Patterson or Evans under a theory of supervisory liability

13

and RECOMENDS that claims against them be DISMISSED with leave to amend.

**D.   Fourteenth Amendment Equal Protection Claims**

Plaintiff alleges Defendants were biased and violated the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV.  Generally, to state an equal protection claim "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998).  It requires "that all persons similarly situated should be treated alike."  *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  An equal protection claim may also be based on a "class of one," which does not depend on a protected class, but requires a plaintiff to allege that she has been (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  However, "[t]he class-of-one doctrine does not apply to forms of state action that by their nature involve discretionary decision-making based

14

on a vast array of subjective, individualized assessments." *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012).

Plaintiff neither alleges she is part of a protected class or that Defendants treated her differently than other similarly situated inmates. Moreover, Plaintiff 's allegations of the denial or delay of medical care clearly involve the type of discretionary medical decisions that are not subject to a "class-of-one" analysis. *See id.* (holding that decisions regarding the type of drugs and medical protocols used for execution involve discretionary decisions not subject to "class-of-one" claims). Plaintiff fails to show her alleged mistreatment resulted from intentional discrimination due to membership in a protected class or that she was treated differently than other similarly situated WCCC inmate.

To the extent Plaintiff alleges a due process violation regarding the false disciplinary reports that Defendant Kamelamela allegedly filed, the Court FINDS that Plaintiff was a prisoner when she filed this suit, was and remains subject to the exhaustion requirements under 42 U.S.C. § 1997a(a), and admits this claim is unexhausted. *See Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009) (holding the PLRA's exhaustion requirement applies "to a person who has been released from prison altogether."); *cf. Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (defining prisoners as those "who, at the time

they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915."); *see also Cox v. Mayer*, 332 F.3d 422, 425 (6th Cir. 2003) (requiring exhaustion of administrative remedies because plaintiff was a prisoner when he brought suit and suit implicates prison conditions); *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002) (holding prisoner's release before appeal did not excuse exhaustion because he was a prisoner at the time the complaint was filed); *Satterwhite v. Dy*, 2012 WL 748287, at *3 (W.D. Wash. 2012) (rejecting argument that plaintiff's release excused his exhaustion requirements); *Becker v. Vargo*, 2004 WL 1068779, at *3 (D. Or. 2004) (same).

**E.  Leave to Amend**

The Court FINDS AND RECOMMENDS that Plaintiff's Complaint be DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1). Plaintiff may file an amended complaint on or before **November 11, 2014**, that cures the deficiencies noted above.

Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading and the court will not refer to the original pleading to make any amended complaint complete.  Defendants not named in the amended complaint's caption and claims not realleged in an amended

complaint are deemed waived.[3] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). An amended complaint generally supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Plaintiff is further notified that she must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if she amends her pleading.

**F.    28 U.S.C. § 1915(g)**

Plaintiff is notified that if she fails to file an amended complaint correcting the deficiencies identified in this Findings and Recommendation, this dismissal may later count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

---

[3] Claims dismissed without leave to amend need not be repled in an amended complaint to preserve them for appeal. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*). However, "claims that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.*

## IV. CONCLUSION

IT IS HEREBY FOUND AND RECOMMENDED that:

(1)  The Complaint be DISMISSED for failure to state a claim.

(2)  Plaintiff may file an amended complaint curing the deficiencies noted above on or before **November 11, 2014**.  Failure to timely amend the Complaint and cure its pleading deficiencies may result in **DISMISSAL** of this action for failure to state a claim, and may be counted as a strike pursuant to 28 U.S.C. § 1915(g).

(3)  The Clerk is directed to mail Plaintiff a form prisoner civil rights complaint so she can comply with these directions.

IT IS SO ORDERED.

DATED: October 15, 2014.



Kevin S.C. Chang
United States Magistrate Judge

*Schoenwandt v. Karan, et al.*, Civ. No. 14-00398 HG-KSC/; scrng 2014/Schoenwandt 14-398 hg ksc (orig. C); J:\ChambersKSC\Wilma\A - CM-ECF ORDERS\A - CM-ECF ORDERS\2014\Denise\CV 14-00398 HG-KSC - Schoenwandt - F & R to Dismiss Complaint.wpd